STATE

v.

David BETTENCOURT.

No. 99–445–C.A.

Supreme Court of Rhode Island.

Dec. 22, 2000.

Aaron Weisman, Assistant Attorney General, Annie Goldberg, Assistant Attorney General, for Plaintiff.

Paula Rosin, Assistant Public Defender, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on November 8, 2000, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

This case is now before us for the second time. The case initially came before us on December 8, 1998, following defendant's conviction for second-degree child-molestation sexual assault. The defendant, David Bettencourt (Bettencourt or defendant), had been accused of sexually molesting his then nine-year-old step-daughter (victim). In his original appeal, Bettencourt argued that the trial justice should have granted his motion for a new trial in light of the trial justice's statement that he did not "believe the testimony of the police officer when he testified that this defendant *** knowingly, intelligently and voluntarily waived" his constitutional rights before confessing to the crime. The police officer, Stephen McKenna (Officer McKenna), had testified that Bettencourt, when questioned at the Bristol Police Department, had admitted to "grinding"[1] the

---

1. "Grinding" was characterized by Officer McKenna as a slang term used by police officers when investigating crimes involving sexual assault and child-molestation to de-

victim "maybe a few times." That statement came out only in Officer McKenna's trial testimony; it did not appear in any written or recorded statement taken by the Bristol Police Department. The only other people who testified at trial were the victim, the victim's mother, and Bettencourt.

In an unpublished order, we remanded the case to the Superior Court for a determination of whether Bettencourt's confession was properly admitted into evidence, and, in the event that the confession was not properly admitted, whether this error was harmless beyond a reasonable doubt. We further ordered that the case be returned to this Court for further consideration after those findings were made.

On April 29, 1999, a hearing was held before a justice of the Superior Court. At that hearing, the trial justice held that the statement was not properly admitted because the state had failed to show that Bettencourt had knowingly, intelligently, and voluntarily waived his constitutional rights before making the statement. The trial justice went on to conclude, however, that admission of the statement was harmless error. He observed that the

"uncontradicted testimony [of the victim] was that she testified as to the defendant rubbing against her. [Her mother] testified as to her observations when she entered the room. More particularly, she testified that the defendant said something to the effect, 'I might have touched her when I was drinking,' or something like that. Specifically at page 76 she responded, in response to a question asked by Mr. Ryan, Bettencourt said, 'A couple of times he said that I might have done it when I was drinking, but I don't drink anymore.' If that testimony of [the mother] was believed, which apparently it was, and if [the victim's] testimony was believed, which apparently it was, it's this Court's opinion that evidence was more than

sufficient to allow this jury to find this defendant guilty beyond a reasonable doubt \*\*\*."

That determination having been made, the matter is again before this Court for disposition of the appeal. The defendant now argues that the trial justice erred in determining that the admission of the confession constituted harmless error. Bettencourt argues that the trial justice applied an erroneous harmless error analysis. He argues that the trial justice determined whether the jury *could have* reached the same verdict based solely upon the testimony presented by the victim and the victim's mother, rather than determining whether one could find *beyond a reasonable doubt* that Bettencourt's incriminatory statement to the police could not have contributed to the verdict.

"When reviewing the erroneous admission of an involuntary confession, [this Court], as it does with the admission of other forms of improperly admitted evidence \*\*\* reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt." (Emphasis omitted.) *State v. Humphrey*, 715 A.2d 1265, 1275–76 (R.I. 1998) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331–32 (1991)). "In order to conduct a harmless error analysis of the introduction of an involuntary confession, the offending statement must be 'quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].'" *Humphrey*, 715 A.2d at 1276 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353, 367 (1993)).

During the hearing held in the Superior Court following remand from this Court, the trial justice noted that if he determined that the confession had been invol-

scribe a circular movement made by the perpetrator, usually by the genital area of the

perpetrator, to the "private area of a woman."

untary, he also was required to determine "whether or not there was sufficient evidence upon which a conviction could be obtained or whether or not this error *** was harmless beyond a reasonable doubt." He then noted the "uncontradicted testimony" of the victim "as to the defendant rubbing against her," and the testimony of the victim's mother "as to her observations when she entered the room," namely, that "his shirt was open" and that "[h]e was sweaty and all red." "More particularly," the trial justice noted what the defendant had said to the victim's mother before he spoke to the police: " 'A couple of times he said that I might have done it when I was drinking, but I don't drink anymore.' " He then concluded, as he had earlier when he denied the motion for a new trial, that the jury believed both the victim and her mother. Furthermore, the trial justice concluded that this evidence "was more than sufficient to allow this jury to find this defendant guilty beyond a reasonable doubt and to require this court to deny his motion for a new trial." Indeed, a review of the evidence shows that the evidence presented, even without the erroneously admitted confession, was sufficient to support defendant's conviction.

The defendant argues, however, that admission of the confession in the instant case is not harmless error because the case was purely a credibility contest between himself on one side and the victim and her mother on the other side. He argues that his defense was that the victim had been encouraged by her mother to lie about being sexually molested because she was about to ask defendant for a divorce and she was concerned that he would seek custody of their son. Accordingly, he argues that his statements to the police could have bolstered the credibility of the victim and her mother, and that, ultimately, those statements could have had a significant impact on the jury's decision.

Our decision in State v. Lemos, 743 A.2d 558 (R.I.2000), supports defendant's position. In Lemos, we held that the improper

admission of hearsay statements about the defendant's alleged lack of sexual activity before the alleged sexual assault of his girlfriend's cousin was reversible error. See id. at 566. There, the defendant was accused of sexually assaulting his girlfriend's cousin after his girlfriend and the couple's newborn child had gone to sleep. See id. at 560–61. At trial, the victim testified that she had had a conversation with her cousin in which her cousin told her that the defendant was complaining because the couple had not had sexual relations since their child had been born, approximately three to four weeks before the alleged assault. See id. at 565. The victim also testified that her cousin had told her that she refused to perform oral sex on the defendant. See id. This testimony, although objected to, was admitted at trial. See id. On appeal, the state argued that the testimony "was 'extremely relevant and probative' concerning motive." Id. We held, however, that the testimony was inadmissible hearsay. Furthermore,

> "[b]ecause this was a case that turned on the credibility of the victim and the accused, we [were] unable to say that the improper admission of this evidence was harmless error. *** The specific testimony that defendant objected to was that, according to what Taryn allegedly told the victim, defendant and Taryn had not been having sex with each other, and defendant had been complaining about this fact to Taryn. Given that the alleged sexual assault occurred during this period, the admission of this hearsay may well have affected the jury's evaluation of the evidence." Id. (Emphasis added.)

Similarly, in the instant case, the improper admission of the defendant's confession "may well have affected the jury's evaluation of the evidence." In the instant case, the only people that testified were the victim, the victim's mother, the police officer, and defendant. Much of the testimony revealed that defendant was a loving

and caring father who took both of his stepdaughters and his son fishing and on nature walks, and otherwise engaged in similar activities. There was also *no evidence* presented of physical or emotional abuse. For example, the victim testified that she continued to receive A's and B's at school throughout the alleged period of abuse and that her grades had remained level even after defendant had left her home. Furthermore, the testimony of the victim and her mother, taken together, do not necessarily establish that defendant had been sexually assaulting the victim. For example, as has been noted, the victim's mother testified that she observed defendant emerge from her daughter's room and that he "was sweaty and all red." The victim herself, however, testified that defendant was in her room for "[m]aybe 30 to 40 seconds" before her mother came home. However, admission of the involuntary confession could certainly have bolstered the credibility of the testimony of the victim and her mother. Even though the Supreme Court of the United States held in *Fulminante* that a confession was subject to a harmless error analysis, it cautioned:

> "A confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him ***. [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so.' *** While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision. In the case of a coerced confession *** the risk that the

confession is unreliable, coupled with the profound impact that the confession has upon the jury, requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless." *Fulminante*, 499 U.S. at 296, 111 S.Ct. at 1257–58, 113 L.Ed.2d at 322–23.

In the case at bar, viewing the totality of evidence with the required degree of caution, it cannot be said *beyond a reasonable doubt* that admission of the statement did not contribute to defendant's conviction, despite the fact that the other evidence introduced at trial was sufficient to support defendant's conviction.

Consequently, the defendant's appeal is sustained, the judgment of the Superior Court is reversed, and the papers in the case are remanded to the Superior Court with directions to accord the defendant a new trial.