## STATE

### v.

### William PAGE.

### No. 2000–43–C.A.

Supreme Court of Rhode Island.

Feb. 26, 2002.

Jane M. McSoley, Aaron L. Weisman, Providence.

Paula Rosin, Providence.

### ORDER

This case came before the Supreme Court on January 28, 2002, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and considering the memoranda of the parties, we conclude that cause has not been shown. Accordingly, we shall decide the appeal at this time.

The defendant, William Page (Page or defendant), is an inmate at the Adult Cor-

rectional Institutions serving a sentence of life without parole. On July 12, 1996, during a cell search, Correctional personnel discovered a "Y" shaped piece of metal, an inch to an inch and a half long, stuck in a piece of putty above Page's desk. Also discovered, concealed in a crevice near the ceiling was a toothbrush with the bristles removed and the end honed to a sharp point, an item more commonly referred to as a "shank." A string was attached to this "shank" presumably so that defendant could quickly retrieve it from its nine foot perch. The defendant was subsequently charged with possession of a weapon designed to cut or stab another with the intent to use it unlawfully pursuant to G.L.1956 § 11–47–42.[1] On June 28, 1999, during a jury trial in Superior Court, Correctional Officer Jeoffrey Brouillette (Brouillette) the officer who discovered the contraband was also permitted to render an expert opinion, over defense counsel's objection, about the potential uses of these inmate fashioned weapons. The trial justice concluded that "anyone looking at the toothbrush would, at first glance, think it's just a toothbrush. But when the officer testifies as to how [these items] were used at the prison, he, I think, qualifies as an expert in that particular field[.]" Brouillette testified that he had found sharpened toothbrushes such as the one discovered in defendant's cell on four or five occasions and that these implements were intended to be used to stab and injure an inmate. Further, he testified that on two or three occasions in the past he had witnessed

them used for this purpose and had observed the resulting injuries. However, when asked how these implements were actually used, Officer Brouillette responded by saying that they were used "for revenge." Defense counsel interrupted this answer with an objection that was sustained by the trial justice who found that the question had already been asked and answered by the witness. Defense counsel's subsequent motion to strike the testimony was denied on the ground that it was not contemporaneous with the objection.

Page also testified on his own behalf. He denied any knowledge of the shank's presence in his cell, but acknowledged that the "Y" shaped piece of metal found above his desk was indeed his. The defendant claimed that he found the object inside the shower block two weeks prior to its discovery and that he had kept it to clean his toenails. In an apparent attempt to impeach Page's credibility, the state asked Page if he had been disciplined while incarcerated for failing to cut his finger nails. Defense counsel objected and the trial justice sustained the objection noting that the discipline occurred two years after the charged event. Defense counsel's request for a cautionary instruction was denied by the trial justice who found that his ruling on the objection was "a close question."

The defendant first argues on appeal that Brouillette was not qualified to testify as an expert witness. Rule 702 of the

---

1. G.L.1956 § 11–47–42 states in pertinent part:

"(a)(1) No person shall * * * with [the] intent to use unlawfully against another, carry or possess a dagger, dirk, stiletto, sword-in-cane, bowie knife, or other similar weapon designed to cut and stab another. ***

(2) * * * [A]ny person violating the provisions of this subsection while he or she is

incarcerated within the confines of the adult correctional institution shall be punished by a fine of not less than one thousand dollars ($1,000) nor more than three thousand dollars ($3,000), or by imprisonment for not less than one year nor more than five (5) years, or both, and the weapon so found shall be confiscated."

Rhode Island Rules of Evidence permits a witness who is qualified "by knowledge, skill, experience, training, or education" to testify as an expert. The trial justice must determine if the expert testimony has "substantial probative value," meaning in part that it conveys information that is not ordinarily within the knowledge of the average lay person. *State v. Wheeler*, 496 A.2d 1382, 1388 (R.I.1985) (quoting *Montuori v. Narragansett Electric Co.*, 418 A.2d 5, 10 (1980)). The trial justice must further consider " 'whether the testimony sought is relevant, within the witness's expertise, and based on an adequate factual foundation.' " *State v. Bettencourt*, 723 A.2d 1101, 1112 (R.I.1999) (quoting *Rodriquez v. Kennedy*, 706 A.2d 922, 924 (R.I. 1998)). Here, the trial justice determined that an ordinary lay person may not recognize the "shank" as a weapon and that Brouillette's experience as a correctional officer qualified him as an expert in this particular field. Indeed, Brouillette's subsequent testimony that he had encountered similar weapons, knew how they were used and had personally witnessed the wounds inflicted by these implements, supported the trial justice's conclusion. This testimony is directly relevant to the question of whether a sharpened toothbrush is a "weapon designed to cut and stab another" as prohibited by the statute. Thus, we discern no error or abuse of discretion on the part of the trial justice in allowing Brouillette to proffer an expert opinion.

The defendant next argues that the trial justice erred in refusing to strike Brouillette's answer that sharpened toothbrushes are used "for revenge." The trial justice sustained defense counsel's objection to the answer but refused defendant's request that this answer be stricken, finding that the request was not timely. We are satisfied that defendant's request was clearly contemporaneous with the objection and the answer should have been stricken. *Bettencourt*, 723 A.2d at 1107. However, we are satisfied that the ruling amounted to harmless error. The defendant was charged with the crime of "[possession of a weapon designed to cut or stab another] *with the intent to use [it] unlawfully against another.*" (Emphasis added.) Although Brouillette's statement applied to the general purpose of these weapons within a prison environment, this was not necessarily defendant's intended use. The evidence disclosed that when the "shank" was found in defendant's cell, it was wrapped in moist toilet paper. Thus, an inference that the "shank" was possessed by defendant could be properly drawn by the jury. Evidence was also introduced that the toothbrush had been sharpened to a point and that such implements were designed and employed as stabbing weapons. The jury could, therefore, infer from these facts that defendant intended to use the weapon to inflict harm. Intent may be inferred from a totality of the circumstances. *See State v. Clifton*, 777 A.2d 1272, 1277 (R.I.2001). When evaluating improperly admitted evidence, this Court reviews the remainder of the evidence introduced in order to determine whether the error was harmless beyond a reasonable doubt. *See State v. Bettencourt*, 763 A.2d 636, 637 (R.I.2000). In light of the overwhelming evidence in this case supporting a verdict of guilty, we conclude that the trial justice's failure to strike this answer amounted to harmless error.

Similarly, defendant's third and final allegation of error, is without merit. The defendant assigns as error the refusal of the trial justice to give a cautionary instruction relative to a line of questioning regarding a disciplinary infraction imposed against defendant two years after the charged incident for failing to maintain his

fingernails. While defendant maintained that the "Y" shaped piece of metal found in his cell was for the purpose of cleaning his nails, we agree that defendant's failure to maintain his nails two years after the weapon was found, is of questionable relevance. The defendant, pointing to *State v. Ordway*, 619 A.2d 819 (R.I.1992), maintains that the state's unanswered question about prison discipline for failing to keep his nails trimmed was so inflammatory that reversal is mandated. In *Ordway*, however, we were confronted with a woman on trial for the manslaughter of her husband who was asked if she had stabbed another individual during a previous relationship. *Id.* at 825. We stated that "once lay people have heard evidence, or in this case a remark, tending to show that the defendant committed a crime similar to the one he or she is being tried for, their impartiality may become tainted." *Id.* at 826. Prison discipline imposed two years after the contraband was discovered hardly creates the type of prejudice that concerned this Court in *Ordway*. We note that the jury was necessarily apprised of defendant's inmate status by the nature of these charges. Thus, directly correlated to the question's lack of relevance in this case, is its lack of prejudicial impact.

Finally, defendant argues that the state failed to present sufficient evidence to demonstrate that defendant knowingly possessed the contraband and that the denial of his motion for a new trial was, therefore, in error. It is well settled that in deciding a motion for a new trial, the trial justice must determine "whether the evidence adduced at trial is sufficient for the jury to conclude guilt beyond a reasonable doubt." *State v. Scurry*, 636 A.2d 719, 725 (R.I.1994). The trial justice found the testimony of Brouillette to be "totally credible." He noted that the tissue paper in which the "shank" was wrapped was wet, a fact that demonstrates that it had been recently secreted in defendant's cell, thus strengthening his belief that this weapon was indeed in defendant's actual possession. The trial justice, like the jury, heard evidence that the cell had been searched only three days earlier, resulting in the discovery of no contraband, save an extra pen. Further, the expert testimony of Brouillette was sufficient to establish intent. Finally, the trial justice noted that in light of his charge to the jury regarding intent, it was entirely reasonable for the jurors to infer an intent to use the weapon to harm others. Therefore, we discern no error in the trial justice's denial of the new trial motion.

Accordingly, the defendant's appeal is denied and dismissed. The judgment is affirmed and we remand the papers in this case to the Superior Court.