James SEABRA

v.

Patricia TRAFFORD–SEABRA.

93–626–A.

Supreme Court of Rhode Island.

March 1, 1995.

Louis M. Pulner, Providence, for plaintiff.

Walter R. Stone, Adler, Pollock & Sheehan, Providence, for defendant.

## OPINION

SHEA, Justice.

This case is on appeal from a decree of the Family Court granting joint custody of the minor child of the parties to the plaintiff, James Seabra and the defendant, Patricia Trafford–Seabra. The defendant appeals on the grounds that joint custody of the minor child is not in the best interests of the child. For the following reasons, we affirm the award of joint custody.

The facts pertinent to this appeal are as follows. On May 25, 1986, James Seabra (James) and Patricia Trafford–Seabra (Patri-

cia) were married. On March 12, 1987, their only child, a son named Victor was born.[1] In December of 1989, after many years of an unsettled relationship and periods of living apart, James filed a complaint for divorce, seeking custody and visitation of Victor. Patricia subsequently filed a counterclaim for divorce also seeking custody of Victor.

On April 13, 1990, the trial justice issued a temporary order awarding Patricia sole custody of Victor. James was originally granted visitation rights of three times a week. On July 2, 1990, that visitation schedule was modified to include overnight visitation every Saturday morning through Sunday morning.

In September of 1990, during a period in which James was allowed unsupervised overnight visits with Victor, Patricia noticed small bruises on Victor's penis. On September 17, 1990, Patricia brought Victor to his pediatrician, Domenic Indindoli, M.D. Doctor Indindoli examined Victor and found evidence of a rash in the genital area that he diagnosed as petechia, minor hemorrhages in the capillaries in the surface of the skin. Doctor Indindoli concluded that petechia could be and is possibly consistent with sexual abuse. Patricia brought Victor to see her sister, Jean Trafford, a Providence police officer. Based on Victor's statement that he received the "boo-boo" on his penis from his paternal grandmother (Dolores Case), and the presence of petechia on Victor's penis, Patricia and Jean Trafford brought Victor to the North Providence Police Station where he repeated his allegations against his grandmother. When Patricia contacted Dr. Indindoli about the abuse allegations, he filed a physician's report with the Department for Children, Youth and Families (DCYF), which is a standard practice if a mother alleges sexual abuse.

The allegations were investigated on two separate occasions by DCYF, and both investigations indicated findings of abuse by Victor's grandmother and neglect on the part of James for failing to supervise Victor during the visitations in which the alleged abuse occurred. Also, Victor indicated to Patricia that James had "hit his penis." At the urging of DCYF investigator, Michael Bousquet,

Patricia brought Victor for an evaluation by a psychotherapist who is a certified independent social worker with specialization in the area of sexual trauma, sexual victimization and sexual abuse treatment and assessment. On the basis of eight sessions, the psychotherapist recommended that James's visitation rights be suspended due to his finding that Victor's reports of sexual abuse were true.

At the same time, the trial justice ordered Victor to undergo evaluation by a clinical psychologist, Brian Hayden, Ph.D. Doctor Hayden met with Victor, James, and Patricia and found that Patricia's anxiety level and emotional problems deserved further evaluation. He suggested that at no time should Victor's grandmother be the sole custodial adult for Victor due to her history of emotional instability and alcohol abuse. He also concluded that overnight visitation with James would be suitable for Victor because there was no actual evidence of sexual abuse.

In the following months the relationship between the parties became increasingly strained. James filed a motion for change of custody and/or to modify visitation in order to either obtain custody of Victor or be awarded unsupervised visitation. Patricia sought to suspend James's visitation based on the allegations that he and his family had sexually assaulted Victor.

From July of 1991 through October of 1991, the trial justice heard testimony regarding these motions and the allegations of abuse and molestation. The court made a finding that there was no sexual abuse by James or Victor's paternal grandmother. On October 28, 1991, a temporary order was issued granting visitation to James. In addition, the order provided that Victor undergo psychological evaluation with Dr. Richard Solomon. Doctor Solomon found that it was impossible to determine the validity of the sexual maltreatment accusations. On the basis of his observations, Dr. Solomon indicated that Victor's visits with his father should be supervised and that clinical supervision of their relationship was advisable.

1. Victor is a fictitious name.

In July of 1992, Victor made a disclosure to the psychotherapist recounting an incident of sexual abuse by James and his uncle Peter Seabra (Peter), a man of diminished mental capacity. After Victor made the same disclosure to Patricia, she contacted Peter. Peter then confirmed Victor's statements regarding the molestation and repeated the statements to Patricia's attorney. On July 16, 1992, Patricia accompanied Peter to the state police barracks where he admitted to being involved in sexually molesting Victor.

After James became aware that Peter had been subpoenaed to testify in this matter, a motion for restraining order was filed on Peter's behalf on the ground that he had been afraid of Patricia and had been coerced into making indecent confessions. Cognizant of Peter's mental deficiencies and the alleged coercive behavior of Patricia, the trial justice conducted his own in camera examination of Peter. Peter admitted to the trial justice that neither he nor his brother James nor their mother ever abused Victor, and that he lied to the state troopers when he made his previous confession. The trial justice recognized that Peter was a man of limited intellect and was susceptible to controlling influences. Therefore he issued a restraining order to keep Patricia from coming into contact with Peter. The trial justice also found Peter to be mentally incompetent to testify in the custody proceeding.

On July 29, 1993, final judgment was entered awarding James and Patricia joint custody of Victor with physical placement to remain with Patricia. James was permitted overnight visitation; however, Victor was not to be left in the unsupervised presence of his uncle, Peter Seabra. Victor's paternal grandmother, Dolores Case, was permitted visitation with Victor as long as James was physically present. The trial justice also ordered that Victor meet with Dr. Solomon on Mondays subsequent to each overnight weekend visitation. On July 29, 1993, Patricia filed a timely notice of appeal to this court.

■ In the context of domestic relations particularly, we recognize that "the findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed by this court on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence." *Tarro v. Tarro*, 485 A.2d 558, 564–65 (R.I.1984) (citing *Raheb v. Lemenski*, 115 R.I. 576, 350 A.2d 397 (1976)). Patricia asserts that the trial justice overlooked or misconceived material evidence of sexual abuse when making his joint-custody order. She relies on the statements of Victor, the psychotherapist, the social caseworker, Jean Trafford and a DCYF case worker to confirm that Victor had indeed been abused. However, she fails to recognize that the testimony of Dr. Hayden purports to show that there was no evidence of abuse of Victor by his father. The trial justice met individually with Victor and Peter Seabra in order to obtain the truth concerning abuse allegations. The trial justice made a credibility determination and found that Victor had not been sexually abused by either James, the grandmother, or James's brother Peter. The record provides sufficient evidence to support the finding of the trial justice. We therefore hold that he did not overlook or misconceive material evidence in the case at bar.

■ Patricia also contends that the trial justice erred by finding James's brother (Peter Seabra) incompetent to testify with respect to the issue of the alleged molestation of Victor. Rule 601 of the Rhode Island Rules of Evidence provides that every witness must be competent to testify. When making a competency determination, the court must consider the witness's ability to observe, recollect, communicate, and *appreciate the necessity of telling the truth.* *State v. Cabral*, 122 R.I. 623, 629, 410 A.2d 438, 442 (1980).

■ The trial justice is afforded considerable deference in making a competency ruling since he is in the best position to assess the witness's present ability to comprehend the obligation of his oath, and to give a correct account of what he may have seen or heard. *State v. Franklin*, 103 R.I. 715, 724, 241 A.2d 219, 225 (1968). A competency decision will be overturned on an abuse of discretion only. *State v. Ranieri*, 586 A.2d 1094, 1098–99 (R.I.1991). In the case at bar

the trial justice was convinced that Peter Seabra was not competent to testify at trial.

The trial justice made the determination that Peter Seabra would have extreme difficulty giving an accurate account of the alleged abuse. The record indicates that Peter is a mildly retarded individual who became scared by the proceedings and is easily capable of being manipulated. In addition Peter Seabra's social caseworker testified that Peter repeatedly lies simply to tell people what he thinks they want to hear. Therefore we agree that the trial justice did not abuse his discretion by finding Peter Seabra incompetent to testify in the custody proceeding.

■ The mission of the court when making a child custody determination is to determine exactly what constitutes the best interests of the child. *Veach v. Veach,* 463 A.2d 508, 510 (R.I.1983). Despite the obvious animosity between the parents, the trial justice found both of them to be loving parents. We agree that there is sufficient evidence to support this decision and therefore hold that the trial justice was amply justified in making this joint-custody order.

For the foregoing reasons the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Family Court.