### STATE

v.

### Leon STANSELL.

### No. 2005–92–C.A.

Supreme Court of Rhode Island.

Nov. 14, 2006.

Jane McSoley, Esq., Providence, for Plaintiff.

Marie T. Roebuck, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 3, 2006, on the defendant, Leon Stansell's (defendant), appeal from a Superior Court judgment of conviction for two counts of conspiracy to violate the Uniform Controlled Substances Act. The defendant argues that: (1) the trial

justice erred in limiting cross-examination of the state's witness, (2) his conviction for two counts of conspiracy was legally incorrect, and (3) the denial of the defendant's motion for a new trial was in error. For the reasons stated herein, we affirm the judgment of conviction.

## Facts and Travel

In January and February 2002, Rhode Island State Police Det. Michael Casey (Det.Casey), while assigned to the Narcotics Division, was investigating a marijuana trafficking ring. During the course of his investigation, Det. Casey obtained information that David Mercier (Mercier) and defendant were involved in selling marijuana and that they both lived at 121 Veazie Street in Providence. Detective Casey also ascertained that there was an outstanding warrant for defendant's arrest, in connection with a June 1996 arson investigation in Providence. Detective Casey's investigation also was centered around the Auto Emporium, a used-car dealership on Route 146 in North Smithfield, Rhode Island.

On February 18, 2002, at approximately 9:30 a.m., Det. Casey was conducting surveillance of the Auto Emporium in North Smithfield when a Dodge Durango (Dodge) driven by defendant pulled into the lot; defendant left the vehicle and entered the business. A few minutes later, defendant, Mercier, and another man, later identified as Vincent Della Torre (Della Torre), left the building together and walked over to the Dodge. Detective Casey saw defendant reach into the vehicle and retrieve something that he surmised was a key. The defendant then walked over to an old Buick Century (Buick)[1] that was parked in the lot and opened the trunk with the key. The defendant moved some items in the trunk and removed a plastic bag. He returned to the Dodge, and the three men left the premises. At that point, Det. Casey called for a uniformed cruiser to stop the vehicle based on the outstanding warrant. The defendant was placed under arrest. When questioned, defendant admitted that he had taken oil out of the trunk but denied that there was marijuana in the Buick.

The defendant, Mercier, and Della Torre returned to the Auto Emporium, along with Det. Casey, several state police officers, and a K–9 German Shepard named Bandit.[2] The police asked Mercier, the owner of the Buick, for permission to search the trunk.[3] Initially he declined, but he consented after Bandit scraped and barked at the trunk—a signal that drugs were present in the vehicle. When Det. Casey opened the trunk of the Buick, he observed two open duffel bags and several plastic shopping bags, as well as an open case of motor oil. Detective Casey detected a strong odor of marijuana and saw a green, leafy substance in the bags, which were seized and later were determined to hold over twenty-two pounds of marijuana.

Although no contraband was found in the Dodge, a briefcase containing $13,000 was seized. The money belonged to Mer-

---

1. During his testimony, Mercier referred to the old car as an Oldsmobile, but it appears that whether it be a Buick or an Oldsmobile, the parties were talking about the same car.

2. We note that Bandit, a German Shepard that worked with Det. Kevin Barry, is a well-known K–9, at least according to the defense attorney at trial, who said that he knew of Bandit, because Bandit was "frequently used

in these kinds of investigations." According to the Rhode Island State Police 2005 Annual Report, "after eight years of dedicated service," Bandit retired from being a patrol narcotics K–9 in 2005.

3. Although there is a dispute as to whether Mercier still worked at the Auto Emporium in February 2002, he testified that he regularly stored cars in the lot of that establishment.

cier, who was arrested at the scene.[4] Thereafter, Mercier consented to a search of his home at 121 Veazie Street, where he directed the officers to $25,975 in cash that was hidden in a vase.

In exchange for a lenient sentence, Mercier agreed to assist the police with their investigation. As part of his cooperation agreement, Mercier testified against defendant and disclosed that, in February 2002, Mercier was working for Della Torre, buying and selling cars and dealing marijuana on the side. Mercier also testified that in exchange for room and board, as well as cash and gifts, defendant was delivering marijuana and collecting money for him.

Mercier entered a plea of *nolo contender* to possession of more than five kilograms of marijuana, possession with intent to distribute marijuana, and conspiracy to possess more than five kilograms of marijuana. He received a ten-year suspended sentence and ten years of probation on each count, the sentences to run concurrently, along with a requirement that he complete 100 hours of community service. He also agreed to forfeit the money that was seized from his home and vehicle.

On August 30, 2002, defendant was indicted and charged with: (1) possession of more than five kilograms of marijuana, (2) conspiracy to possess more than five kilograms of marijuana, (3) possession of marijuana with intent to distribute, and (4) conspiracy to possess marijuana with intent to distribute. After a jury trial, defendant was found guilty on counts 2 and 4, conspiracy to possess marijuana and conspiracy to possess marijuana with intent to distribute. The jury was dead-

locked on counts 1 and 3, and a mistrial was declared on those counts.

The defendant filed a motion for a new trial on the basis of the split verdict. He also argued that he was entitled to a new trial because there was no corroboration of the testimony of Mercier, who, in exchange for his cooperation and testimony, received a sentence of less than jail.[5] The trial justice found that the evidence was straightforward, and that Det. Casey's testimony as well as Mercier's testimony was credible. He therefore denied the motion for a new trial. The defendant was sentenced on counts 2 and 4 to concurrent terms of twenty years in the Adult Correctional Institutions, with ten years to serve, ten years suspended, and ten years of probation.

The defendant filed a timely notice of appeal, assigning multiple procedural and substantive errors that we shall consider *seriatim*. Additional facts will be supplied where necessary.

### Limitation of Cross–Examination

■ The defendant argues that the trial justice abused his discretion and committed prejudicial error by limiting defendant's cross-examination of Mercier about whether he reported drug money on his tax returns. We disagree.

■ The United States and Rhode Island Constitutions guarantee the right to confront one's accusers. U.S. Const. Amend. VI; R.I. Const. art. 1, sec. 10; *State v. Hazard*, 745 A.2d 748, 755 (R.I. 2000). Inherent in this right "is the fundamental right of the criminal defendant to cross-examine his or her accusers." *Haz-*

---

4. Della Torre was questioned at the Lincoln barracks and released.

5. The record discloses that Mercier received the lenient sentence in exchange for cooperat-

ing with the authorities in three other cases, as well as this one, and that as a result of the information he provided, several drug arrests were made.

*ard,* 745 A.2d at 755–56 (quoting *State v. Wiley,* 676 A.2d 321, 324 (R.I.1996)). Defense counsel is always permitted to inquire into possible bias or motive of the state's witnesses, *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Texter,* 594 A.2d 376, 377 (R.I.1991), but the scope of such cross-examination is not unlimited. *State v. Oliveira,* 730 A.2d 20, 24 (R.I.1999) (citing *State v. Doctor,* 690 A.2d 321, 326–29 (R.I. 1997)).

■ It is well settled that trial justices are accorded wide discretion to curtail cross-examination after there has been "sufficient cross-examination to satisfy the Sixth Amendment." *Oliveira,* 730 A.2d at 24 (quoting *State v. Sifuentes,* 649 A.2d 500, 502 (R.I.1994)). A trial justice's decision to limit the scope of cross-examination is reviewed for clear abuse of discretion; the decision will be overruled "only if such abuse constitutes prejudicial error." *Id.*

In this case, we are of the opinion that the trial justice did not abuse his discretion when he declined to permit defendant to inquire about Mercier's income tax returns. As a cooperating state's witness, Mercier was cross-examined extensively about the lenient sentence he received in exchange for his testimony, and about his lucrative drug dealing. Mercier admitted that most of his income came from selling marijuana. Defense counsel then asked Mercier: "Certainly the money that you made selling marijuana you don't declare that on your income tax return, right?" The trial justice excluded that question on relevance grounds.[6] The record discloses, however, that Mercier admitted that he made substantial amounts of money selling drugs and he was exhaustively cross-examined about his cooperation agreement and illegal activities. We are of the opinion

that this ruling was within the trial justice's discretion, and we discern no abuse of discretion in limiting cross-examination on this issue.

■ Furthermore, we are satisfied that if there had been an error in this case, it would have been harmless. *See Oliveira,* 730 A.2d at 24 (a trial justice's decision limiting cross-examination will be overruled "only if such abuse constitutes prejudicial error"). Here, defendant's cross-examination of Mercier spans forty-three pages of transcript testimony. The record shows that Mercier repeatedly acknowledged that most of his income came from dealing marijuana. We are satisfied that defendant was afforded ample opportunity to cross-examine Mercier about his drug dealing as well as his cooperation agreement. Therefore, even if the trial justice did err in precluding questioning about Mercier's potential income tax evasion, that error would have been harmless.

### Sufficiency of Conspiracy Conviction

■ Next, defendant contends that his two convictions for conspiracy cannot stand. The defendant argues that because Mercier entered a plea of *nolo contender* to a single count of conspiracy, defendant cannot be convicted of two conspiracies. There is no indication, however, that defendant raised this issue before the trial justice. This Court's long-standing "raise-or-waive" rule provides that if an issue is not raised below, it cannot be asserted for the first time on appeal. *State v. Texter,* 896 A.2d 40, 43 (R.I.2006); *see also State v. Russell,* 890 A.2d 453, 462 (R.I.2006). Although this Court has, on occasion, recognized an exception to this rule with respect to a defendant's constitutional rights, it is a narrow exception that does not apply to the present facts. *See Texter,* 896 A.2d at 43. Having determined that this

6. The trial justice also determined that there was a potential Fifth Amendment issue be-

cause the statute of limitations had not yet run on tax evasion.

issue is not properly before us, we decline to entertain it.

### Denial of Motion for a New Trial

■ The defendant alleges that the trial justice erred in denying his motion for a new trial because, he contends, the verdicts were inconsistent. The defendant argues that the verdicts were against the weight of the evidence.[7] "It is well settled that in deciding a motion for a new trial, the trial justice must determine 'whether the evidence adduced at trial is sufficient for the jury to conclude guilt beyond a reasonable doubt.'" *State v. Page*, 792 A.2d 748, 751 (R.I.2002) (mem.) (quoting *State v. Scurry*, 636 A.2d 719, 725 (R.I. 1994)). It is incumbent upon the trial justice to "pass upon the weight and credibility of the evidence and accept or reject conflicting testimony and, in the exercise of his or her independent judgment, consider all of the material evidence in light of his or her charge to the jury * * *." *State v. Hornoff*, 760 A.2d 927, 933 (R.I. 2000).

■ In performing this function, "the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Davis*, 877 A.2d 642, 646 (R.I.2005) (quoting *State v. Salvatore*, 763 A.2d 985, 990–91 (R.I. 2001)). The trial justice must "form his or her own opinion of the evidence" weighing each witness's credibility along with all of the evidence adduced at trial. *Id.* (quoting *Salvatore*, 763 A.2d at 991). Finally, the trial justice must decide "whether [he or she] would have reached a different result from that of the jury." *Id.* If the trial justice agrees with the verdict, the inquiry is at an end. *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994) (citing *State v. Marini*, 638 A.2d 507, 515–16 (R.I.1994)). In

cases in which the trial justice disagrees with the verdict, he or she must then determine whether the evidence is such that reasonable minds could differ. *Id.* at 1367 n. 1 (citing *State v. Girouard*, 561 A.2d 882, 891 (R.I.1989)).

■ Provided that the trial justice has "articulated an adequate rationale for denying a motion for a new trial," *State v. Bleau*, 668 A.2d 642, 646 (R.I.1995), his or her decision "is entitled to great weight." *State v. Dame*, 560 A.2d 330, 332 (R.I. 1989). This Court "will not disturb that decision unless he or she 'overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong.'" *State v. Sosa*, 839 A.2d 519, 529 (R.I.2003) (quoting *Bleau*, 668 A.2d at 646).

When he denied the defendant's motion for a new trial, the trial justice noted that this was a two-witness case. Therefore, he was not called upon to resolve conflicting testimony, but was required to assess the credibility of the witnesses. The trial justice concluded that based upon the evidence before him, he would have reached the same conclusion as the jury on the conspiracy charges. Because he agreed with the jury's verdict, the trial justice was not required to make any further analysis. The defendant has not pointed to material evidence that was overlooked or misconceived, and there is no indication that the trial justice was clearly wrong. Accordingly, we affirm the denial of a new trial.

### Conclusion

For the foregoing reasons, the judgment of conviction is affirmed and the papers are remanded to the Superior Court.

---

7. The defendant also argues that the verdicts are legally inconsistent; but since he did not raise this issue below, it is not properly before us.