**STATE**

v.

**Jose RIVERA.**

No. 2008–100–C.A.

Supreme Court of Rhode Island.

Feb. 12, 2010.

Christopher R. Bush, Department of Attorney General, for Plaintiff.

Martin D. Harris, Esquire, for Defendant.

Present: SUTTELL, C.J., and GOLDBERG, FLAHERTY, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Chief Justice SUTTELL, for the Court.

The defendant, Jose Rivera, appeals from a judgment of conviction, after a jury trial, of two counts of first-degree sexual assault, four counts of second-degree sexual assault, and one count of simple assault. On appeal, the defendant presents four grounds for reversal of his conviction. He contends that: (1) the complaining witnesses were not competent to testify at trial; (2) the trial justice erred in denying his motion to sever the trial counts; (3) the denial of his motion for new trial was an abuse of discretion; (4) the testimony of the complaining witnesses was not competent, legally sufficient, or otherwise credible; and (5) it was error for the trial justice to permit the state to lead the complaining witnesses during direct examination. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

Mr. Rivera was employed as a bus driver in the RIde division of the Rhode Island Public Transit Authority (RIPTA), begin-

ning on June 9, 2003. The RIde division provides transportation to people living in Rhode Island needing door-to-door service, such as the developmentally disabled and the elderly.

In 2005, Mr. Rivera drove five separate routes providing transportation to people attending the Adeline LaPlante Memorial Center (LaPlante Center), a private organization that provides services for children and adults with developmental disabilities. Mr. Rivera picked up his assigned passengers, drove them to the LaPlante Center, and assisted passengers as they got on and off the RIde bus.

The defendant's convictions stem from allegations that Mr. Rivera sexually assaulted three developmentally disabled women in June and July 2005. During this period, the three complaining witnesses in this case, Tracy, Elaine, and Deborah,[1] were passengers on two of Mr. Rivera's bus routes.

## A

### Tracy

Tracy, then thirty-seven years old, has a severe developmental disability. Tracy worked at the LaPlante Center for four years prior to the alleged assaults, and she took the RIde bus to the LaPlante Center each day. Tracy testified that Mr. Rivera sexually assaulted her twice when they were alone together on the bus.

The first sexual assault allegedly occurred in the RIde bus while it was parked in the woods.[2] Tracy testified that defendant removed her pants, and she hit her head against the corner of the bus window. Tracy further stated that defendant touched her breasts under her bra without her consent. The defendant, according to Tracy's testimony, also touched his penis to her vagina. She further testified that "[h]e tried to go inside with mine." Tracy stated that she told Mr. Rivera, "no, stop it" and "[p]lease, stop it."

The second assault allegedly occurred while the RIde bus was parked behind a church. According to Tracy's testimony, Mr. Rivera and Tracy were alone together on the bus when he removed her socks, pants, and one of her shoes. She said defendant touched his penis to her "private area in front" and touched her breasts under her clothing and bra. Tracy further testified that "[a]ll white stuff came out" of defendant's penis and that she told defendant to stop, but he continued to assault her. Mr. Rivera told Tracy, according to her testimony, not to tell her parents, or she would get in trouble. Tracy stated that when she arrived home, she told her mother that she had to wash her hands because she had "sticky stuff" on them.

Tracy testified that she ultimately reported the incident to her mother, although she was too scared to tell her mother at first. Tracy said that she first spoke to Deborah about Mr. Rivera and, some time after, they both told their mothers about the assaults. Her mother testified that she remembered the day she got off the bus and was not acting like herself, but her mother could not recall the exact date.

On July 13, 2005, Tracy went to a physician's assistant, Josephine Barns–Brown, and, according to Ms. Barns–Brown, Tracy reported that she had lumps on her "peewee" and her left inner thigh. Ms. Barns–

---

1. We use pseudonyms to refer to the complaining witnesses.

2. There are inconsistencies in Tracy's testimony. She testified that this sexual assault occurred in the woods near a male passenger's house, and also that it took place in the woods near Deborah's house.

Brown testified that she was unable to determine the exact date of the assaults, that Tracy's hymen was intact, and that Tracy's mother had not found blood in Tracy's underwear. Although Tracy testified that she had lumps on her breasts and hip, Ms. Barns–Brown testified that she did not find any such lumps or bumps.

Mr. Rivera denied assaulting Tracy and, in fact, testified he was never alone with Tracy on the bus. The defendant stated that when he announced to his passengers he was going to be transferred to another route, Tracy was "angry, upset" and was in "tears." Tracy testified that she told defendant "you're not going anywhere; you're going to be my bus driver." Tracy indicated that she wanted to get Mr. Rivera fired because she was upset that he was changing routes.

Detective Patrick Strickland testified that he spoke to Tracy's mother in the course of investigating the allegations against defendant. Tracy's mother reported, according to Det. Strickland, that Tracy told her that defendant "exposed his penis to her [and] asked her if she wanted to play a game," but that defendant never touched her. Detective Strickland testified, however, that when he spoke with Tracy, she reported, consistent with her own testimony, that defendant vaginally raped her and touched her breasts over and underneath her clothing. Tracy reported to Det. Strickland that this occurred while defendant and Tracy were alone together on the bus, parked in the woods.

## B

### Elaine

Elaine, then twenty-two years old, has a developmental disability stemming from a seizure disorder. Elaine testified that one morning she was on the RIde bus parked in front of the LaPlante Center and defen-dant asked Corey, another passenger, to move from the seat next to Elaine. According to her testimony, Mr. Rivera sat next to her and used the palm of his hand to rub her breast area underneath her clothing and bra. The defendant also allegedly used his first finger and hand to touch her "privates" underneath her underwear. Elaine stated that she used taekwondo training to attempt to block Mr. Rivera's advances and told him to stop. Elaine further testified that there were five other passengers on the bus when the assault occurred.

Elaine alleged that Mr. Rivera assaulted her on one occasion. When Elaine went into the LaPlante Center the morning of the assault, she approached Danielle Fournier Cole, an employee of the LaPlante Center at the time of the alleged assault, and told her that the bus driver had touched her inappropriately. Ms. Fournier Cole testified, contrary to Elaine's testimony, that Elaine reported she had been touched a couple of times that week. Although the date of the assault is not apparent from the record, Ms. Fournier Cole prepared a statement documenting Elaine's report on July 22, 2005.

Two passengers on the RIde bus testified that they witnessed Mr. Rivera assault Elaine. Corey confirmed that he was sitting next to Elaine when defendant told him to move. According to Corey's testimony, defendant then sat next to Elaine and touched Elaine's chest, her legs, and "in a private part." Corey stated that he observed the alleged assault by looking in a mirror mounted above the driver's seat of the bus. Katherine, another passenger, testified that she saw defendant touch Elaine's breast and vagina.

At trial, defendant elicited testimony to establish facts suggesting Elaine had a motive to fabricate the allegations against

him. The defendant attempted to establish facts that (1) tended to show Elaine sought revenge against defendant for reprimanding her on the bus; (2) Elaine had a propensity to lie, especially that she had a propensity to make false accusations of sexual assault; and (3) the three complaining witnesses shared stories of defendant's sexual assault before reporting the incidents to authority figures, implying that they had colluded to make such allegations.

Mr. Rivera testified that he reprimanded Elaine and a male passenger, Emil, for being "intertwined" on the bus, "kissing, hugging and carrying on." The defendant further testified that Elaine and Emil were "furious" at him for intervening. The defendant stated he reported the situation to employees of the LaPlante Center a day or two prior to Elaine's accusation of sexual assault.

During the trial, defendant questioned Brenda Centracchio, a state social worker at the LaPlante Center, about a "status sheet" she prepared that indicated Elaine's mother thought Elaine had a grudge against Mr. Rivera for reprimanding her. The trial justice, however, did not permit the questioning to continue, and he did not allow the admission of the "status sheet" as a full exhibit, ruling that it constituted double hearsay.

Supporting defendant's theory that Elaine had a propensity to lie, Elaine's mother testified that she did not, at first, believe her daughter had been assaulted because some LaPlante Center attendees had started a "pathological liars club" and they were "trying to one up each other." The defendant unsuccessfully sought to introduce other evidence suggesting Elaine had a propensity to lie; namely, that Elaine previously had made a false accusation against both Emil and another person. The defendant questioned Elaine about the alleged incident between Elaine and Emil, and Elaine denied that he had "done anything physically inappropriate," but noted that Emil had "kissed [her] and stuff like that when [she] didn't want to." The defendant also questioned Elaine's mother about whether Elaine had accused other people of touching her inappropriately. The trial justice, however, sustained the state's objections to the questions, and the theory was not further developed at trial.

Finally, defendant sought to elicit testimony implying that the complaining witnesses had discussed the allegations with one another. Tracy testified that Elaine told her about her allegation against Mr. Rivera, whereas Elaine denied discussing the alleged assault.

## C

### Deborah

Deborah, then thirty-nine years old, has a developmental disability and three types of seizure disorders. Deborah worked at the LaPlante Center for approximately twelve years, and left in 2005.

Deborah testified that while she was alone on the bus with defendant, Mr. Rivera placed his finger on her upper body without her consent. Deborah stated that, in response, she zipped up her jacket. Both Deborah and her mother testified that after defendant dropped Deborah off at home, Deborah reported the incident to her mother. Deborah's mother believed that Deborah reported the incident to her between June 20, 2005, and June 24, 2005. Tracy also testified that she saw Mr. Rivera touch Deborah.

### D

### Competency Hearing and Trial

On February 10, 2006, a grand jury issued an indictment charging Mr. Rivera with seven offenses, including second-de-

gree sexual assault of Deborah (count 1), two counts of first-degree sexual assault of Tracy (counts 2 and 4), two counts of second-degree sexual assault of Tracy (counts 3 and 5), and two counts of second-degree sexual assault (counts 6 and 7) of Elaine. The indictment charged defendant with committing each of the aforementioned counts "on a specific date between the 1st day of June, 2005 and the 31st day of August, 2005 * * *."

Before trial the trial justice conducted a hearing upon defendant's motion to determine the competency of each of the three complaining witnesses.[3] These witnesses and a defense expert, Ronald L. Stewart, M.D., testified at the hearing.

At the competency hearing, Deborah listed the members of her family, described her pets, and she recited her address. Deborah also was able to recall what she had for breakfast. She communicated an observation that the prosecutor was holding a blue pen, and she stated that it was bad to tell a lie. Deborah, however, did get somewhat confused about what she had eaten the previous day, and she had never heard the word "prosecutor" before. Deborah also had difficulty answering some other questions and naming the prosecutor, and she admitted that she rehearsed her testimony with the prosecutor.

Tracy, during the competency hearing, was able to state her address, the people with whom she lives, and her pets. She also was able to identify the prosecutor's pen and paper. Tracy stated that she was a woman and the prosecutor was a man, but she was unable to explain how to tell men and women apart. Tracy promised to tell the truth, but was unable to define the word "promise." Tracy also was unable to correctly describe the role of the judge, prosecutor, or lawyer.

Tracy contradicted herself at several points during the hearing. She stated that she had tuna fish for lunch, and later testified that she had not yet eaten. She also testified that she knew Deborah, and later stated that she did not know Deborah. When asked whether she would be able to recognize defendant, Tracy answered "no." Also, when asked, "If you were asked a question about what you did in the summer of 2005 and you can't remember what you did in 2005, what are you going to say?" Tracy responded, "I worked that day."

Doctor Stewart testified that he heard just over half the testimony, and on the basis of his observations and the documents, interviews, and reports provided to him, he could not reach an opinion about the competency of the complaining witnesses. Doctor Stewart said that neurological testing was required to assess "the cognitive ability and reliability" of the complaining witnesses and stated later that he had "been asking * * * frequently for qualified experts in the respective field" to assess the complaining witnesses. Defense counsel, however, did not request neurological testing and instead stated, "the Court would be in the best position to determine the need, if any, to have the alleged victims further examined."

At the conclusion of the competency hearing, on May 22, 2007, the Superior Court found all three complaining witnesses competent to testify and denied defendant's motion to sever the counts. On May 23, 2007, after the jury was empaneled, an eight-day trial began.

---

3. The defendant narrowed his argument on appeal to the competency of Tracy and Deborah. We will, accordingly, address the competency hearing only as it relates to Tracy and Deborah.

On June 4, 2007, the jury returned a guilty verdict on two counts of first-degree sexual assault, four counts of second-degree sexual assault, and one count of simple assault or battery. On July 20, 2007, the trial justice denied defendant's motion for a new trial. On August 7, 2007, the trial justice sentenced defendant to life imprisonment for counts 2 and 4 and fifteen years to serve on counts 3 and 5, all such terms to run concurrently. He also sentenced defendant to two concurrent terms of fifteen years on counts 6 and 7, said terms to run consecutively to counts 2, 3, 4, and 5. Finally, he sentenced defendant to one year, consecutive to all other counts for the simple-assault conviction. This sentence amounts to life imprisonment, plus sixteen years.

We discuss additional facts in the context of the issues raised on appeal.

## II

## A

## The Competency of the Complaining Witnesses to Testify

### 1. Standard of Review

■■ This Court will overturn a trial justice's competency ruling only if there has been an abuse of discretion. *State v. Lynch,* 854 A.2d 1022, 1029 (R.I.2004). "The trial justice is afforded considerable deference in making a competency ruling since he is in the best position to assess the witness's present ability to comprehend the obligation of this oath, and to give a correct account of what he may have seen or heard." *Id.* (quoting *Seabra v. Trafford–Seabra,* 655 A.2d 250, 252 (R.I. 1995)). When there is any doubt concerning a witness's minimum credibility, it "should be resolved in favor of allowing the jury to hear the testimony and judge the

credibility of the witness themselves." *Lynch,* 854 A.2d at 1030.

### 2. Discussion

The trial justice in the instant case conducted a two-day competency hearing, allowing both defendant and the state to question the complaining witnesses. Further, Dr. Stewart presented testimony and his opinion about the competency of the witnesses. After hearing the complaining witnesses and the expert witness testify, the trial justice found all three complaining witnesses competent to testify given their appreciation of the need to tell the truth and their ability to observe, recollect, and communicate.

The defendant contends the trial justice abused his discretion in finding two of the three complaining witnesses, Tracy and Deborah, competent to testify at trial. Specifically, defendant draws attention to discrepancies in Tracy's testimony, her testimony that she would be unable to identify defendant if she saw him, and her inability to explain the differences between a male and a female. In further support of his position, defendant notes Tracy's inability to explain the word "promise," her inability to identify the roles of a judge, lawyer, or prosecutor, as well as weaknesses in her recollection. The defendant highlights the fact that Tracy spontaneously uttered statements such as "he touched me," and that Tracy had inconsistencies in her testimony. Additionally, Mr. Rivera contends that Tracy's admission that she had rehearsed her testimony further supports his argument that she was incompetent to testify.

Similarly, Mr. Rivera argues that it was an abuse of discretion for the trial justice to find Deborah competent to testify. To support his argument, defendant notes that Deborah was unable to differentiate between a man and woman, that she did

not know the meaning of the word "oath," and that she had practiced her testimony before the competency hearing.

■ "Rule 601 of the Rhode Island Rules of Evidence requires that a witness be competent to testify." *Lynch*, 854 A.2d at 1029. To find a witness competent to testify, the trial justice must make four determinations: "the witness must be able to 'observe, recollect, communicate, and *appreciate the necessity of telling the truth.*'" *Id.* (quoting *Seabra*, 655 A.2d at 252). Furthermore, there is no *per se* rule that disqualifies individuals with developmental disabilities or mental illnesses from testifying at trial. *See id.* (finding a sixteen-year-old developmentally disabled youth competent to testify); *State v. Franklin*, 103 R.I. 715, 723–24, 241 A.2d 219, 225 (1968) (noting that there is no presumption disqualifying a mentally ill witness). Rather, competency is to be determined by the trial justice on a case-by-case basis. *See Pierce v. New England Telephone & Telegraph Co.*, 86 R.I. 326, 330–31, 134 A.2d 421, 423 (1957).

■ In the case under review, Tracy demonstrated her ability to observe and communicate her observations when she identified a pen and a piece of paper that the prosecutor was holding. She also exhibited her ability to recollect and communicate when she identified her address, the people with whom she lives, and her pets. Tracy demonstrated an appreciation for the necessity of telling the truth when she agreed to say "I don't remember" if she did not recall an answer to a question. She also exhibited an understanding of the consequences of lying and promised not to lie. When the prosecutor asked whether a piece of paper was red, Tracy corrected the prosecutor, stating that the paper was white, thus showing that she was able to correctly observe the color of the paper, communicate her observation, and tell the truth.

■ Although Tracy admitted to rehearsing her testimony, this does not change our analysis of her competency. Testimony rehearsal goes to the credibility of the witness, not his or her competency. *Cf. State v. Russell*, 950 A.2d 418, 434 (R.I.2008) (approving a trial justice's consideration of a witness's testimony rehearsal in passing on the credibility of her testimony). It was within the province of the trial justice to consider the witness's testimony in light of the fact that she had rehearsed her testimony. Tracy's honesty about having rehearsed her testimony could be seen further as adding to her credibility and her appreciation of the need to tell the truth.

■ Tracy was unable to define the word "promise," but a witness need not be able to explain such abstract concepts. Rather, he or she must be able to appreciate that he or she must be truthful. Tracy did state during the competency hearing that she would be unable to identify defendant if she saw him,[4] but she was able to identify him during the actual trial. Finally, Tracy's testimony that she could not differentiate between a man and a woman, and her confusion over questions about Deborah, do not alter our assessment, considering that the totality of her testimony exhibited her ability to observe, recollect, and communicate. We agree with the trial justice that although Tracy responded to

---

4. The dialogue concerning Tracy's ability to identify defendant occurred as follows:

"[State]: If you saw [defendant], you [*sic* ] would you be able to recognize him?"
[Tracy]: No.

"[State]: You wouldn't be able to recognize him if you saw him again?"
"[Tracy]: I won't ever see him again. I won't be on the bus then."

questions very literally, her literal understanding of language does not preclude her from being able to communicate.

 Similarly, Deborah displayed her ability to recall and communicate facts as she named the members in her family, described her pets, recalled what she ate for breakfast, and recited her home address. Deborah did display some confusion concerning what she had eaten the previous day, but she asked for clarification. Additionally, when she could not recall an answer, she chose not to answer the question, rather than give an incorrect answer.

 Deborah also displayed an appreciation for telling the truth when she stated that "you should tell the truth" and "a lie is bad." Furthermore, she stated that if she did not understand a question about something that occurred in 2005, she would state that she could not remember. Deborah's inability to articulate the difference between a man and a woman does not bear on her ability to observe, recollect, and communicate, given the totality of her testimony. Moreover, for the reasons noted above, Deborah's rehearsal of her testimony and her inability to define "oath" are not sufficient grounds to find her incompetent to testify.

Considering the totality of the evidence adduced at the competency hearing, we are satisfied that the trial justice's ruling was a sustainable exercise of his discretion.

## B

### Motion to Sever

The defendant avers that the trial justice improperly denied his motion to sever the counts against him.[5] Mr. Rivera contends that he was prejudiced by having three victims, particularly three developmentally disabled victims, testify against him during one trial because their testimony confused the jury. Furthermore, Mr. Rivera disagrees with the standard of review for severance of trial counts; specifically, he does not believe that "substantial prejudice" should be the standard. The defendant also argues that he was prejudiced because the weight of the evidence against defendant for some of the counts may have been greater than for others. Finally, defendant argues that it is unlikely the state would call a victim as a witness during a separate criminal trial because it would violate defendant's Fifth and Fourteenth Amendment constitutional rights.

### 1. Standard of Review

 Severance of the counts against a defendant, under Rule 14 of the Superior Court Rules of Criminal Procedure, is not a matter of right, but rather lies within the sound discretion of the trial justice. *State v. Pereira,* 973 A.2d 19, 27 (R.I.2009). This Court will not overturn a "trial justice's decision under Rule 14 absent a clear abuse of discretion." *Id.* at 28 (citing *State v. Rice,* 755 A.2d 137, 143 (R.I.2000)). For reversal, "a defendant must show that the trial justice's denial of the motion to sever prejudiced the defendant to such a degree that he or she was denied a fair trial." *State v. Hernandez,* 822 A.2d 915, 920 (R.I.2003) (quoting *State v. Verrecchia,* 766 A.2d 377, 386 (R.I. 2001)).

 Furthermore, "in cases in which the outcome would have been the same

---

5. Though defendant's brief presented his motion to sever argument under his motion for new trial heading, it does not appear that defendant addressed his motion for severance in his motion for new trial. Thus, we treat it as independent from defendant's appeal from the denial of the motion for new trial.

had separate trials been held, we will not disturb the trial justice's decision not to sever, even when the defendant may have suffered some disadvantage in defending against the joined counts simultaneously." *Rice*, 755 A.2d at 144.

### 2. Discussion

▊▊▊ Rule 8(a) of the Superior Court Rules of Criminal Procedure allows the state to charge a defendant with multiple offenses in a single indictment if the offenses are "of the same or similar character or are based on the same transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." A trial justice may, however, under Rule 14 order separate trials of the counts against the defendant "[i]f it appears that a defendant or the State is prejudiced by a joinder of offenses * * *."

▊▊▊ Generally, Rule 14 does not require severance when "the evidence related to each one of the counts is straightforward, simple, and distinct." *State v. Day*, 898 A.2d 698, 705 (R.I.2006) (quoting *Rice*, 755 A.2d at 144). We are confident that the trial justice did not abuse his discretion in denying defendant's motion for severance. The counts against Mr. Rivera were similar in character and "straightforward, simple and distinct."

▊▊▊ It is well settled in this jurisdiction that a defendant must show substantial prejudice for this Court to overturn a trial justice's denial of a motion for severance. *See Pereira*, 973 A.2d at 28 ("The defendant must show that he did, in fact, suffer real and substantial prejudice"). In fact, defendant himself notes in his brief that the defendant must show that sever-

ance resulted in substantial prejudice.[6] Substantial prejudice is determined by balancing "efficiency and convenience in judicial administration on the one hand and the defendant's right to a fair trial without prejudice on the other." *Id.* (quoting *Day*, 898 A.2d at 705).

This Court has found that substantial prejudice from joinder may come in different forms:

"(1) [The defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which it found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find." *Pereira*, 973 A.2d at 28 (quoting *State v. Patriarca*, 112 R.I. 14, 30, 308 A.2d 300, 311 (1973) and *Drew v. United States*, 331 F.2d 85, 88 (D.C.Cir.1964)).

Mr. Rivera contends that there was potential for the jury to be misled because of the amount of evidence presented against him and, also, that the jury may have been misled because the weight of evidence with respect to one complaining witness was stronger than the evidence with respect to the other two complaining witnesses. It is unclear whether Mr. Rivera believes the jury may have used evidence from the stronger case to infer guilt in the other cases against him, or whether he believes the jury viewed the evidence cumulatively. In either case, defendant's argument is unavailing, and we decline to disturb the trial justice's ruling.

---

**6.** Defense counsel also conceded at oral argument that the test was "substantial preju-

dice."

In *Rice*, 755 A.2d at 141, the defendant was charged with six counts related to four incidents of sexual assault committed at three separate locations against two minor children. This Court in *Rice* found joinder appropriate because the incidents of sexual assault occurred during a short time span, the incidents occurred in close geographical proximity to one another, and the counts were similar to one another. *Id.* at 143–44.

In the present case, Mr. Rivera was charged with seven counts of sexual assault against three people with developmental disabilities and with whom he had contact as a RIde vehicle operator. The alleged assaults also were committed in the same vehicle over a period of approximately one month. Additionally, the evidence as to each count was straightforward, simple, and distinct. Generally, the three complaining witnesses testified about their own allegations, their mothers testified to the counts relating to their daughters, and the remaining witnesses gave background information about the RIde bus, the LaPlante Center, and the investigations that ensued upon the women's reports. The straightforward and distinct presentation of evidence in this manner facilitated the jury's understanding of the separate counts.

██ The trial justice also stated at least twice during the jury instructions that each of the charges had to be considered separately and that the state must prove each element beyond a reasonable doubt. This Court has adopted the presumption that "juries are able to respond impartially to the trial evidence with the assistance given by instructions from the trial justice." *Day,* 898 A.2d at 705 (quoting *State v. LaRoche,* 683 A.2d 989, 998

(R.I.1996)). In the present case, the jury's thoughtfulness in its consideration of the facts and credibility of the witnesses not only is presumed, but also may be inferred from defendant's conviction on one count of a lesser-included offense.

Moreover, defendant's argument that the state would not call one victim as a witness in a separate criminal trial because it would violate defendant's Fifth and Fourteenth Amendment constitutional rights is confusing, undeveloped, and without merit. The defendant seems to hypothesize that "a defendant," not necessarily Mr. Rivera himself, would be faced with a dilemma concerning whether he or she should testify about one victim and not another victim.

██ This Court has held that severance is not "mandatory every time a defendant wishes to testify to one charge but to remain silent on another. If that were the law, a court would be divested of all control over the matter of severance and the choice would be entrusted to the defendant." *Pereira,* 973 A.2d at 29 (quoting *United States v. Archer,* 843 F.2d 1019, 1022 (7th Cir.1988)). A defendant must "offer in timely fashion 'enough information' so that the court can weigh 'the considerations of judicial economy' against the defendant's 'freedom to choose whether to testify' as to a particular charge." *Id.* (quoting *United States v. Alosa,* 14 F.3d 693, 695 (1st Cir.1994)).

In the present case, Mr. Rivera's argument is difficult to decipher, and he also did not raise the dilemma of choosing to testify about separate complaining witnesses below. Therefore, we decline to consider any theoretical prejudice joinder may have caused.[7]

---

7. Mr. Rivera also stated that a juror was excused for cause, off the record, because the juror said, "he could not sit on the jury be-

cause of what the defendant had done to all those women." This incident, if it did indeed happen as defendant recounts, does not show

## C

### Motion for New Trial

#### 1. Standard of Review

The defendant raises a number of issues with respect to the denial of his motion for new trial. This Court is deferential to the trial justice when reviewing the decision on a motion for new trial. "Provided that the trial justice has 'articulated an adequate rationale for denying a motion,' * * * a trial justice's ruling on a new trial motion is entitled to great weight." *State v. Flori*, 963 A.2d 932, 937 (R.I.2009) (quoting *State v. Bergevine*, 942 A.2d 974, 981 (R.I.2008)). "Accordingly, '[a] trial justice's ruling on a new-trial motion will not be overturned unless the trial justice was clearly wrong or unless he or she overlooked or misconceived material and relevant evidence that related to a critical issue in the case.' " *Id.*

When deciding a motion for new trial on the basis of the legal sufficiency of the evidence, "the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Cerda*, 957 A.2d 382, 385 (R.I.2008) (quoting *Bergevine*, 942 A.2d at 981). "[T]he trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *State v. Schloesser*, 940 A.2d 637, 639 (R.I.2007) (quoting *State v. Morales*, 895 A.2d 114, 121 (R.I.2006)). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *Id.* (quoting *State v. Gomez*, 848 A.2d 221, 234 (R.I.2004)). "If, however, the trial justice finds that the state has failed to prove the defendant's guilt beyond a reasonable doubt, a new trial must be ordered." *Cerda*, 957 A.2d at 385.

Although defendant does not expressly articulate an argument claiming that the trial justice committed an error of law, he raises several issues with respect to the denial of his motion for new trial which imply that the trial justice applied incorrect legal standards. These issues, he contends, "may warrant the Supreme Court considering a reversal." Given the substance of defendant's claims, we treat these issues as an appeal from the trial justice's denial of his motion for new trial based upon error of law. The trial justice's identification of the correct legal standard is a question of law, which this Court will review *de novo*. *See State v. Oliveira*, 961 A.2d 299, 308 (R.I.2008) ("This Court undertakes a *de novo* review of questions of law * * *."); *see also Votolato v. Merandi*, 747 A.2d 455, 460 (R.I. 2000) (noting that, in a civil case, "for this Court to determine whether a trial justice has abused his or her discretion concerning the grant or denial of a new trial based on an error of law occurring at the trial, we must review that grant and the accompanying trial record before us *de novo*, as we do for other questions of law"). In the case at bar, we have carefully considered defendant's arguments and are well satisfied that the trial justice identified and applied the correct legal standards.

#### 2. The Legal Sufficiency of Evidence Presented at Trial

The defendant argues that the testimony of the complaining witnesses

---

actual substantial prejudice. Rather, it illustrates the effectiveness of voir dire, because the prospective juror was eliminated from the jury after exhibiting prejudice.

"was neither competent, legally sufficient nor credible." Specifically, defendant contends that the evidence supporting defendant's alleged penetration of Tracy was "vague, suspect, unclear and not competent." The defendant furthermore lists a number of facts to which the complaining witnesses testified during trial and states that they are devoid of credibility.

It is our opinion, however, that the trial justice sufficiently conducted an independent review of the evidence and adequately stated his justification for denying defendant's motion for new trial. In denying the motion for new trial, the trial justice applied the proper standard in making the determination and acted as a thirteenth juror, exercising independent judgment on the credibility of witnesses and on the weight of the evidence. The crux of this case is credibility: whether the jury believed defendant or the three complaining witnesses. After the trial justice independently assessed the credibility of the witnesses, he concurred with the jury that the complaining witnesses were credible. The trial justice supported this conclusion by referring to the testimony of virtually all of the key witnesses, especially the three complaining witnesses.

After an independent review of defendant's testimony, the trial justice determined that he was not credible. The trial justice placed emphasis on the fact that defendant's description of the seating structure of the bus was inaccurate, in addition to the fact that defendant's driver manifests contradicted his statement that he never was alone on the bus with Tracy.

■ The mere fact that defendant disagrees with the trial justice's conclusions about credibility is not a sufficient basis to warrant the granting of a motion for new trial. *See State v. Otero*, 788 A.2d 469, 474 (R.I.2002) (denying a motion for new trial noting that it was within the trial justice's

province to make credibility determinations). As this Court has stated, "it is the trial justice who has [had] the opportunity to observe the witnesses as they testify and therefore is in a better position to weigh the evidence and to pass upon the credibility of the witnesses than is this [C]ourt [.]" *State v. Luanglath*, 749 A.2d 1, 5–6 (R.I.2000) (quoting *Lembo v. Lembo*, 677 A.2d 414, 417 (R.I.1996)). Accordingly, the "trial justice's ruling on a new trial motion is entitled to great weight." *State v. Flori*, 963 A.2d 932, 937 (R.I.2009) (quoting *Bergevine*, 942 A.2d at 981). We are satisfied that the trial justice did not abuse his discretion in finding the evidence legally sufficient.

### 3. Impeachment and the Bill of Particulars

■ The defendant argues that he was prejudiced and that the prosecutor committed prosecutorial misconduct when, on cross-examination, the state implied that defendant may have assaulted Tracy on a date outside those designated in the bill of particulars and the indictment. The defendant contends that when asked by the prosecutor whether he was alone with Tracy, or whether Tracy was ever the last passenger on the bus, defendant's answer assumed that the prosecutor referred only to the time frame within the bill of particulars and the indictment.

Mr. Rivera testified that he never was alone with Tracy on the bus, "[e]specially around the summer of 2005." The state later asked Mr. Rivera whether there were two instances in May during which Tracy was the last passenger on the bus. The defendant objected to the line of questioning as being outside of the time frame contained in the bill of particulars, but the trial justice allowed the questioning. In response, defendant replied that he could not recall, but, upon having his recollection

refreshed by a driver's manifest, he testified that Tracy was, in fact, the last person on the bus on May 23, 2005. Thereafter, the state moved to admit the May 2005 driver's manifest into evidence as a full exhibit. The defendant objected on the grounds that the driver's manifest was "not within the scope of the dates as indicated in the indictment." The trial justice overruled defendant's objection. In denying defendant's motion for new trial, the trial justice stated that this line of questioning was allowed because it was solely for the purpose of impeachment.

It is apparent from our review of the record that the state's line of questioning was intended to serve impeachment purposes. The state sought to impeach both defendant's memory and truthfulness in the eyes of the jury and was not attempting to prove that defendant had sexually assaulted Tracy in May 2005. This is apparent because the state specifically asked defendant to jog his memory as he was testifying, rather than having defendant refer to the manifest for the correct answer. The defendant's inability to recall whether Tracy was the last person on the bus on May 23 and May 24, 2005, only eight days before the time frame cited in the bill of particulars, impeached defendant's ability to remember facts from that period. Furthermore, defendant previously had testified that Tracy was never the last person on the bus, and it was within the scope of cross-examination to impeach the accuracy of that statement.

Mr. Rivera argues that he believed during questioning that the state referred only to the dates stated in the indictment and the bill of particulars. The actual language of the state's question, however, did not suggest such a limited time frame.

This Court has said that "the function of a bill of particulars is to apprise a defendant of the evidentiary details establishing the facts of the offense when such facts have not been included in the indictment or information." *State v. LaChapelle*, 638 A.2d 525, 527 (R.I.1994). The general rule is that "when a bill of particulars is produced but extraneous evidence is nevertheless admitted at trial, the trial justice must charge the jurors in a manner that makes clear that in order to convict the defendant, they must find the precise charge set forth in the bill." *Id.* at 528.

In the case at bar, the trial justice clearly instructed the jury that the state must prove "beyond a reasonable doubt that the defendant committed the particular charge * * * within that time period charged."[8] Juries are presumed to follow a trial justice's instructions. *State v. Hallenbeck*, 878 A.2d 992, 1009 (R.I.2005) (citing *State v. Perry*, 770 A.2d 882, 885 (R.I.2001)).

We therefore are satisfied that the trial justice did not err in denying the motion for new trial because of the state's questioning of defendant beyond the dates in the bill of particulars and the indictment.

### 4. Evidentiary Issues

#### a. Evidence of Promiscuity

The defendant contends he was improperly precluded from questioning Elaine's mother about a previous incident that suggested Elaine was promiscuous. Specifically, defendant argues that he should have been allowed to question Elaine's mother about an incident when Elaine allegedly allowed a male to enter her hotel room at a Special Olympics event. Mr. Rivera argues that this line of questioning should have been allowed because evidence that Elaine had made sexu-

---

**8.** The defendant did not object to the jury instructions.

al advances toward another male was highly relevant and probative.

■ The rape-shield statute, G.L.1956 § 11–37–13, requires a defendant to notify the trial justice of his or her intention to introduce evidence pertaining to the complaining witness' sexual activities, with a specific offer of proof. Thereafter, the trial justice may allow the evidence to come in if it is found to be relevant. *Lynch,* 854 A.2d at 1035. The purpose of the law is to "encourage victims to report crimes without fear of inviting unnecessary probing into the victim's sexual history." *State v. Manning,* 973 A.2d 524, 535 n. 11 (R.I.2009) (quoting *Lynch,* 854 A.2d at 1035).

The trial justice did not commit error in denying defendant's motion for new trial with respect to the exclusion of questions about incidents that allegedly took place between Elaine and two other men. The record reflects that defendant did not notify the trial justice of his intention to probe into Elaine's conduct or otherwise seek a hearing about the admissibility of such evidence, nor did he make a specific offer of proof. Furthermore, as defendant presents his argument, the incidents appear to have little or no probative value.

### b. Prior Accusations of Sexual Assault

■ The defendant contends he should have been allowed to question Elaine's mother about a previous false allegation against another person.[9] At trial, Mr. Rivera sought to question Elaine's mother about an incident during which Elaine allegedly accused another driver of touching her inappropriately. The state objected on the grounds that the question constitut-

ed impermissible impeachment by extrinsic evidence.

■ Generally, pursuant to Rule 404(a) of the Rhode Island Rules of Evidence, evidence of a witness's prior conduct may not be admitted "for the purpose of proving that he or she acted in conformity therewith on a particular occasion * * *." Under Rule 608(b) of the Rhode Island Rules of Evidence, however, it is within the discretion of the trial justice to allow extrinsic evidence of prior similar false accusations going to a witness's credibility.

We are satisfied that the trial justice did not err in this instance. The defendant never proffered any evidence that the previous allegation occurred, nor that it was false. Without any such evidence, the trial justice was free to find that the prejudicial effect of asking such a question outweighed its probative value and, as a result, to preclude such questioning. *See Manning,* 973 A.2d at 535 ("[H]e must at least present some indicia tending to show that the prior accusation was false, or else he runs the risk of a determination that its probative value is outweighed by its prejudicial effect.").

### c. Cross–Examination and Direct Examination

The defendant contends that the trial justice made numerous erroneous evidentiary rulings that violated his right to confront the witnesses against him and to cross-examine those witnesses, under article 1, section 10, of the Rhode Island Constitution and the Sixth Amendment to the United States Constitution.

The defendant argues that the trial justice erred in ruling that his questioning of a number of witnesses was beyond the

---

9. The question at issue is: "Was there another incident on the bus where another driver was operating, she accused someone else of touching her inappropriately?" Thus, the issue appears to be about an alleged prior false accusation against another person rather than Mr. Rivera, as defendant states in his brief.

scope of direct examination, and thus could not be explored on cross-examination. Specifically, defendant argues that the trial justice erroneously ruled that defendant's questioning of the three complaining witnesses' mothers and Brenda Centraccio, an employee of the Department of Mental Health, Retardation, and Hospitals, was beyond the scope of direct examination, and thus could not be explored on cross-examination. Mr. Rivera also avers he was prejudiced by having to call Det. Strickland during his case-in-chief because the state listed him as a witness but never called him. The defendant further contends that he was unable to pursue lines of questioning with other witnesses, including Deborah, Deborah's mother, Ms. Fournier Cole, and Ms. Lonczak, the recreational director and internal investigator at the LaPlante Center.

 "Inherent in a criminal defendant's constitutional right to confront witnesses against him or her—found in both article 1, section 10, of the Rhode Island Constitution and the Sixth Amendment to the United States Constitution—'is the fundamental right of the criminal defendant to cross-examine his or her accusers.'" *State v. Drew*, 919 A.2d 397, 411 (R.I.2007) (quoting *State v. Stansell*, 909 A.2d 505, 509 (R.I.2006)). A criminal defendant's right to "cross-examination, however, is not unbounded." *Id.* It is well settled that "trial justices are accorded wide discretion to curtail cross-examination after there has been 'sufficient cross-examination to satisfy the Sixth Amendment.'" *Id.* (quoting *Stansell*, 909 A.2d at 510). This Court will review "[a] trial justice's decision to limit the scope of cross-examination * * * for clear abuse of discretion; the decision will be overruled 'only if such abuse constitutes prejudicial error.'" *Id.*

 Rule 611(b) of the Rhode Island Rules of Evidence restricts "[c]ross-examination * * * to the subject matter of the direct examination and matters affecting the credibility of the witness." *See also State v. Gordon*, 880 A.2d 825, 838 (R.I.2005) ("[C]ross-examination is generally limited to the scope of direct examination * * *."). Questions that exceed the scope of direct examination but are "calculated to explain, contradict or discredit a witness's testimony or designed to test the witness's accuracy, memory, veracity, credibility or bias" may be permitted on cross-examination. *State v. Motyka*, 893 A.2d 267, 284 (R.I.2006) (quoting *Gordon*, 880 A.2d at 838). However, "it is well within the trial justice's discretion 'to limit cross-examination to that which was addressed on direct examination.'" *Id.* (quoting *State v. Walsh*, 731 A.2d 696, 698 (R.I.1999)).

 In the case at bar, we are satisfied the trial justice limited cross-examination of the complaining witnesses' mothers in an appropriate manner. The questions defendant asked were clearly outside the limited scope of direct examination. As to Ms. Fournier Cole and Ms. Lonczak, defendant does not specify the legal basis for his argument, nor do we perceive any abuse of the trial justice's discretion. Similarly, the trial justice sustained objections to questions defendant asked of Deborah that generally called for speculation, or were overly broad and did not have a specific time frame.

All other allegations of error on the part of the trial justice concerning evidentiary issues have been reviewed, and we perceive no error in the trial justice's denial of the motion for new trial.

### D

### Motion to Lead the Complaining Witnesses

██ The defendant argues that the state should not have been allowed to ask

Tracy leading questions because she was not an emotionally distraught witness. Mr. Rivera further contends that the trial justice's approach of considering each question on a question-by-question basis, rather than generally allowing or disallowing leading questions, was poor practice and invited error. The state counters that defendant's objection to leading questions was waived at trial because defendant did not properly raise the issue with specificity.

Before trial began, the state filed a motion requesting leave to ask leading questions of the complaining witnesses, and Mr. Rivera filed an objection to the state's motion. Rather than making a broad ruling on the motion, the trial justice announced that he would consider the questions as they were presented, and only then determine whether leading questions were appropriate given the context. The trial justice, during a sidebar colloquy, stated the following:

> "So it may be that it's permissible to lead one [witness] and maybe not [another]; but I'll take it as it comes. * * * If we get to that point and the [s]tate starts asking leading questions and [defendant objects], I'll make that ruling then * * *. But if I overrule your objection I [will] give you a continuing objection * * *."

Although defendant does not specifically identify the questions to which he objects, we have identified the most likely exchanges from the citations given in defendant's brief. The first exchange defendant raises on appeal appears as follows:

> "[State]: What part of his body touched your privacy?"
>
> "[Tracy]: His penis.
>
> "[State]: Did it go inside?
>
> "[Defense counsel]: Objection."

The second colloquy at issue occurred as follows:

> "[State]: Are you talking about the same place that you just told us about?
>
> "[Tracy]: Well, one is in the woods?
>
> "[State]: Well, I'm not talking about the woods anymore.
>
> "[Defense Counsel]: Objection.
>
> "THE COURT: Overruled.
>
> "[State]: I want to talk about the time that you were behind the church.
>
> "[Defense Counsel]: Objection.
>
> "THE COURT: I don't believe there was a question."

A trial justice's ruling made during the examination of witnesses at trial will stand unless "there has been an abuse of discretion or substantial injury to a defendant." *State v. Gomez*, 848 A.2d 221, 237 (R.I.2004) (quoting *State v. Boillard*, 789 A.2d 881, 886 (R.I.2002)). This Court gives "considerable latitude to a trial justice's rulings made during examination of witnesses at trial." *Id.* "Furthermore, we will consider the entire colloquy and the full context of the state's examination in making our determination." *State v. Merced*, 933 A.2d 172, 175 (R.I.2007).

"A leading question * * * suggests the desired answer." *Id.* Leading questions generally are not permitted on direct examination; however, a trial justice may use his or her discretion to allow leading questions "for a number of limited purposes." *Id.* This Court has recognized the discretion of a trial justice to allow leading questions, for example, when a witness appears to be having a lapse in memory or to aid "an emotionally distraught juvenile witness reluctant to relate the necessary facts." *Boillard*, 789 A.2d at 887. Additionally, this Court has held that a trial justice has the discretion to permit leading questions of a juvenile or "other witness of diminished understanding."

*State v. Vanasse*, 593 A.2d 58, 68 (R.I. 1991) (quoting *State v. Girouard*, 561 A.2d 882, 888 (R.I.1989)). In *Vanasse*, 593 A.2d at 68, this Court allowed leading questions to facilitate the direct examination of an eleven-year-old complaining witness because "her tender age, coupled with the apparent difficulty she had in understanding questions, justified the use of leading questions on direct examination."

Assuming without deciding that "Did it go inside?" is a leading question, we discern no abuse of discretion on the part of the trial justice. Although Tracy is not a juvenile, she has a developmental disability, and thus it was within the purview of the trial justice to permit leading questions. Moreover, the second exchange to which the defendant objected does not contain a question at all. We are thoroughly satisfied that the trial justice did not err in overruling the defendant's objections.

## III

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court and remand the record of the case thereto.